56 CCPA

**Application of Clarence R. CRABB and Leighton S. McDonald.**

**Patent Appeal No. 8064.**

United States Court of Customs and Patent Appeals.

Jan. 9, 1969.

Earl L. Tyner, Washington, D. C. (Glwynn R. Baker, of Griswold & Burdick, Midland, Mich., Plumley, Tyner & Sandt, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the final rejection of claims 1 and 2, the sole claims of appellants' application.[1]

The invention is concerned with the stabilization, against oxidative degradation, of a solvent comprising 1,1,1–trichloroethane (also known as methyl chloroform) containing a 1,4-dioxane inhibitor. In order for 1,1,1-trichloroethane to function as a metal degreasing solvent, it is known that a stabilizer such as 1,4-dioxane is necessary to prevent metal induced degradation. It was found, however, that during vapor degreasing, oxidative degradation destroys the 1,4-dioxane inhibitor causing the acid content to rise and render the solvent unsuitable. Appellants solved this problem by adding N-methyl pyrrole to stablized 1,1,1-trichloroethane, thus preventing oxidative degradation, loss of dioxane from the solvent and increase in acid content.

Claims 1 and 2 read:

1. A composition consisting essentially of from 50 to 0.10% by weight of N-methylpyrrole and from 50% to 99.9% 1,4-dioxane.

[1]. Serial No. 194,666 filed May 14, 1962, for "Stabilized Solvent."

2. A composition stabilized against oxidative degradation consisting essentially of 1,1,1-trichloroethane and from 1 to 11% by volume, based on the trichloroethane, of a stablizer composition consisting essentially of from 50% to 0.10% by weight of N-methyl pyrrole and from 50% to 99.9.% of 1,4-dioxane.

The references relied upon are:

| Klabunde | 2,492,048 | Dec. 20, 1949 |
|---|---|---|
| Willis et al. | | |
| (Willis) | 2,803,676 | Aug. 20, 1957 |
| Bachtel | 2,838,458 | June 10, 1958 |
| Rapp | 2,923,747 | Feb. 2, 1960 |
| Diamond Alkali | | |
| (Great Britain) | 765,522 | Jan. 9, 1957 |
| Bachtel (Canada) | 568,541 | Jan. 6, 1959 |

Klabunde discloses that N-methyl pyrrole inhibits the oxidation of chlorohydrocarbon solvents such as trichloroethane.

Willis discloses an inhibiting composition for stabilizing trichloroethylene. A combination of 0.005 to 0.1 per cent pyrrole or pyrrole homolog, such as N-methyl pyrrole, and 0.005 to 1 per cent of a lower acetylenic alcohol, such as propargyl alcohol, when added to trichloroethylene, will inhibit decompoition. The patentee states that the addition of 0.1 per cent of dioxane to the composition as an additional stabilizer did not appreciably affect the results.

The Diamond Alkali British patent relates to inhibiting initiation of the oxidation of chlorohydrocarbons such as trichloroethane, commonly associated with commercial tetrachloroethylene, as well as inhibiting the oxidation of tetrachloroethylene itself. The reference discloses the use of a special light stabilizer in combination with a general stabilizer functioning to inhibit decomposition. The patent states that it is known that tetrachloroethylene may be stabilized by the addition of one or more of a wide variety of organic compounds referred to as general-purpose stabilizers and sets forth as exemplary of such general-purpose stabilizer a list of a hundred-odd suitable materials including N-methyl-pyrrole and dioxane. The selection from this list is said to be based upon satisfactory performance at least cost.

Rapp discloses a mixture of dioxane and nitromethane useful as a stabilizing composition for chlorohydrocarbon solvents such as 1,1,1-trichloroethane and tetrachloroethylene.

Bachtel discloses that 1,4-dioxane will stabilize 1,1,1-trichloroethane (methyl chloroform) against decomposition in contact with common metals, and that the presence of a lower aliphatic monohydric acetylenic alcohol in addition to the dioxane reduces the corrosiveness of the 1,1,1-trichloroethane. The patentee states that generally speaking the effectiveness of a particular inhibitor for a particular chlorinated solvent cannot be predicted and inhibitors known to be commercially effective with other chlorinated solvents are not satisfactory for 1,1,1-trichloroethane.

The Bachtel Canadian patent discloses that 1,4-dioxane alone will stabilize 1,1,1-trichloroethane (methyl chloroform).

The examiner rejected claim 1 as unpatentable over the Diamond Alkali patent in view of Willis and claims 1 and 2 as unpatentable over the two Bachtel patents, and Rapp in view of Klabunde, Willis and Diamond Alkali, both rejections being under 35 USC 103.

The board affirmed those rejections, stating with respect to the rejection of claim 1:

We agree with the Examiner that Willis et al., who disclose the expedient of making up a concentrate of a pyrrole and other stabilizing components which may include dioxane * * *, would render obvious to one skilled in this art such a mixture of the selected two stabilizer components taught in Diamond Alkali.

It is also to be noted that, while the claim is limited by the term "consisting essentially of," the specification * * * indicates that additional stabilizing components may be present, negating any criticality in the two component mixtures as compared to the multi-component mixtures of Willis et al. which include dioxane and a pyrrole in proportions falling within that set forth in claim 1.

As to the rejection of claims 1 and 2, the board accepted as their own the examiner's position that:

* * * Bachtel and Rapp show that dioxane alone or in admixture with other ingredients stabilizes 1,1,1-trichloroethane (hereinafter termed methyl chloroform) against decomposition. * * * It is deemed however, that it would be obvious to one having ordinary skill in the art to combine N-methyl pyrrole with dioxane in view of the teachings of the secondary references to Klabunde, Willis et al. and Diamond Alkali. Klabunde teaches that N-methyl pyrrole is an antioxidant * * *, for use with trichloroethane * * *. Willis et al. teach that dioxane is compatible with N-methyl pyrrole. Diamond Alkali teach that N-methyl pyrrole is a stabilizer against the action of heat, moisture, air and metal surfaces for tetrachloroethylene.

Appellants urge that Diamond Alkali and Willis et al. are not appropriate references since they do not deal with methyl chloroform. However, it is noted that Klabunde teach that N-

methyl pyrrole is known as an antioxidant for trichloroethane, which is generic to methyl chloroform.

■ We consider first the rejection of claims 1 and 2 since, if that be found free of error, it will be unnecessary to consider the merits of the separate rejection of claim 1 alone.

Appellants' primary argument in support of their contention that the board erred is that there is no basis in the prior art, as a whole, for combining the two stabilizing compounds of the claim. It is argued that the references neither guide nor even merely invite one to experiment and furthermore do not combine the components for the purposes indicated. The appellants, it is alleged, discovered that 1,1,1-trichloroethane, while not subject to oxidation in its uninhibited state, is susceptible to oxidation when it is combined with dioxane or aluminum and dioxane. Bachtel '458, they urge, supports their position that stabilizers for other chlorohydrocarbons are not effective for 1,1,1-trichloroethane. The Diamond Alkali reference does not support disagreement with this view, it is said, because other chlorohydrocarbons referred to as being subject to oxidation attack as is tetrachloroethylene are present in tetrachloroethylene as impurities.

We fail to find appellants' arguments convincing. Bachtel '458 and Rapp teach the art that different combinations of stabilizers which include dioxane are effective to prevent or significantly inhibit the decomposition of 1,1,1-trichloroethane when in contact with aluminum. Moreover, Rapp, as admitted by appellants, deals with oxidation of 1,1,1-trichloroethane and discloses that nitromethane will inhibit the oxidation reaction of 1,1,1-trichloroethane in the presence of aluminum. Klabunde discloses that N-methyl pyrrole is a known stabilizer, an antioxidant, for use with 1,1,1-trichloroethane, a species embraced by the generic term, trichloroethane, expressly used. This disclosure, we feel, provides a teaching for one skilled in the art to substitute N-methyl pyrrole for the respective stabi-

lizers which are used in Bachtel '458 and Rapp in association with dioxane. Furthermore, Diamond Alkali broadly teaches the concurrent use of dioxane and N-methyl pyrrole for stabilizing trichloroethane and Willis discloses that dioxane is compatible with N-methyl pyrrole when the latter is used to stabilize the cholorhydrocarbon solvent, trichloroethylene. Thus, additional suggestions for the combination are found in the prior art.

We are unable to find, in view of the above, that appellants alone discovered that 1,1,1-trichloroethane is susceptible to oxidation when combined with aluminum and dioxane. Nor do we find that the references considered as a whole teach away from looking to the art of stabilization of other chlorohydrocarbons to inhibit 1,1,1-trichloroethane. Statements to that effect in Bachtel '458 are offset by strong inferences to the contrary in the other references of record, especially Rapp which states in general that any polychlorinated aliphatic hydrocarbon is inhibited in the same way.

While there is some discussion in the record and briefs concerning synergism, an unexpected property of ability to stabilize 1,1,1-trichloroethane against aluminum reaction and oxidation, we have not been shown any clear and convincing evidence to that effect. From the record before us, we are unable to perceive the accomplishment of anything other than what would be reasonably expected by one skilled in the art having the prior art before him.

Appellants urge, in their reasons of appeal, error on the board's part in its application of the rule of law with regard to the scope to be given to the expression "consisting essentially of." However, since appellants' brief confines argument on this ground to its applicability in the rejection of claim 1 alone, we assume that they have abandoned this ground with respect to the rejection of claims 1 and 2.

Since we are in agreement with the board's second ground of rejection that claims 1 and 2 are obvious in view of the prior art, we deem it unnecessary to consider the separate rejection of claim 1 alone.

The decision is affirmed.

Affirmed.

BALDWIN, J., took no part in the consideration or decision of this case.